The first case, National Taxpayers Union v. Department of Health, Human Services, us. Michael Geltner Good morning, Your Honor. I'm Michael Geltner, representing National Taxpayers Union, the petitioner. Thank you. Mr. Geltner, we have your briefs and we're very familiar with all of the issues that you have presented. We would appreciate if you would confine your argument to the constitutional issues, specifically the over-breath issue that you have presented in this appeal. Mr. Geltner Fine. I'll do that. I'd appreciate it even more if you picked up that microphone so I could hear you better. How are we doing now? Much better. Thank you, sir. Mr. Geltner Thank you. The starting premise of my argument, and the issue I think that we're joined with the government, is whether or not actual fraud is a necessary prerequisite under the First Amendment for the punishment of charitable solicitation. I think the case turns on that, and your decision really doesn't need to focus on anything but that. We think that the statute is unconstitutional as applied for that reason, and probably that's also the linchpin of the over-breath argument. The actual fraud relates more to the as-applied challenge, doesn't it, than to the over-breath challenge? I think it's the linchpin of both of our arguments because if, as I believe, actual fraud is required, then the statute is clearly over-broad because it covers much, much more than actual fraud. It covers negligent speech and it covers innocent speech. How does it cover that? How does it cover? Yes, I'm looking at the statute. What in the statute makes it facially over-broad? No person may use in connection with any. . . Just read me the statute. Yes, that's what I'm looking at. Subsection 1, no person, other communication or other production. Those are the key words. No person in a communication or production may use the word social security in a manner which the person knows knowledge or should know negligence or in a manner which reasonably could be interpreted or construed, which we believe is strict liability, as conveying the false impression of government sponsorship, in effect. So that. . . Give me an example. If I write to my wife and I say to her, did you pay your social security or did you obtain a social security payment today, is this involved in this statute? Because the words social security were used. I don't think that that statement could reasonably be interpreted as being sponsored or authorized by the government. Then give me a statement that could be reasonably, reasonably could be interpreted or construed as conveying the false impression that such item is approved, endorsed, or authorized by the Social Security Administration. Well, if you wrote an article in Philadelphia Inquirer and the subject of the article was social security and you wrote an article espousing the current system, social security system is great, it's well run, it works well, et cetera, et cetera, and reasonable people, and you wrote it in a way that reasonable people might believe that the Social Security Administration was sponsoring you, behind you, or whatever, you could be liable. You didn't have to mislead anybody. The only question is whether or not reasonable people could construe it that way. You do have to mislead, don't you? No, you do not have to mislead. The agency's appellate division kind of made its law in the National Federation of Retired Persons case, which the ALJ in our case refers to a lot, and they interpret the statute just fairly straightforward in the text, and they explicitly say that it is not necessary that there be anybody mislead. The only question is whether the language could be construed to be misleading and the person has to have some level of reasonableness. All right. I'm sorry. I think could be interpreted is fairly open-ended. Fairly open-ended, yes. But in the Fourth Circuit in the United States Seniors versus Social Security Administration seemed to express some concern about that. But nevertheless, it ruled against the party similarly situated to NTU in this case, and one of the reasons was that there was no evidence of the substantial burden on protected speech, and I don't see anything in your brief to give us some examples of protected speech. When I think of the Ashcroft case, there were references to movies recommended for Academy Award. There were Romeo and Juliet. There were some concrete examples. In light of the Supreme Court's admonition that to hold a statute facially unconstitutional is strong medicine, what have you given us to agree with that position? Well, I've got two responses. One, I've given you the statute, and the statute is incredibly broad. Well, but you need to give us some examples. Well, I've just given you one. Why are we going to overturn an act of Congress based upon supposition? You haven't given us any concrete examples of things that have happened. Well, I will tell you, Your Honor, that the cases make it clear that the burden is on the government to establish constitutionality in a First Amendment case. It's not our burden. And we don't really need examples. If you look at the breadth of the statute. I don't think it's very broad. That's why I asked you for examples. I can't think of an example that would be interpreted contrary to what the impression of what the objective of the statute is. And that's why I asked you that to begin with. Well, I think that there are – the example I gave you is one. You mean if somebody writes an opinion piece saying social security premiums should be reduced or social security premiums should be increased, that that is something that is approved, endorsed, or authorized, and it's a false impression? If reasonable people could construe it or interpret it that way, that's what the statute says. But if that were true, you could bring an as-applied challenge, couldn't you? Yes, and we have. But if you bring an as-applied challenge, why do you have to get into the over-breadth issue? Well, Your Honor, I've – Isn't that exactly what the Supreme Court just said in the Williams case? If you can bring an as-applied challenge, we disfavor over-breadth challenge. That's my brief. That's exactly my point. I've made the over-breadth argument, but I do think that this is an as-applied case. But in the example that you gave, why cannot the newspaper or the publisher present an as-applied challenge? I think they can. If they can, then the over-breadth challenge is disfavored, and we don't have to get into it. I agree with that. I absolutely agree with that. I think that the key to this case – You're resting your case on an as-applied challenge. Correct. I think that the as-applied – I'm not following you. You're now withdrawing your over-breadth challenge? I'm not withdrawing it, Your Honor. I'm simply saying I wrote my brief with the lead argument as an as-applied challenge. I stood up here intending to argue to you that the statute was unconstitutional as applied. I told you in my brief that Board of Trustees v. Fox says don't look at over-breadth unless you first determine that you can't deal with the statute as applied. And so that's my position. And I stood up to make that argument, and you told me you wanted me to focus on over-breadth, so I made the argument. If I were a judge, I certainly wouldn't read Board of Trustees v. Fox and then go to over-breadth. I'd be looking at as-applied because the Supreme Court says don't go to over-breadth unless you first consider the as-applied argument. You can't win them all, can you? Well, how can you win an as-applied challenge here when it seems so clear that what was done here not once or twice but three times was untrue? This was not fraud, and it wasn't true overall. There were untrue statements commissioned by the government, I think, is what you said. Well, let me start with my— This wasn't commissioned by the government. This was commissioned by an interest group. And a reasonable person wouldn't have thought that it was commissioned by the government for the White House or for the Social Security Session. But isn't it true, though, that deceptive and misleading speech is not entitled to protection? What is not entitled to protection is actual fraud. There are two Supreme Court cases that I rely on for my proposition. Point number one, charitable solicitation is fully protected speech. Supporting case is Riley v. North Carolina. The Supreme Court says that prior cases teach that the solicitation of charitable contributions is protected speech. Point number two, that protected speech, which is charitable solicitation, can be punished only by a finding of actual fraud. That's telemarketing. Supreme Court lays out the requirements for actual fraud. One, knowing falsity. Two, intent to deceive. Three, actual deception. On page 620 of the telemarketing opinion, the Court then goes on to say, exacting proof requirements of this order in other contexts have been held to provide sufficient breathing room for protected speech. And no more. If your position is correct, only actual fraud can be banned. That means that it's okay to mislead and deceive the public, especially the seniors that Congress was interested in, in mailings to that group of the population. It is okay in a charitable solicitation if it was not actual fraud. Now, I will tell you. But that means you can deceive and mislead all you want in these mailings to the public. If you deceive and mislead and you want to deceive and mislead, you have committed actual fraud. And if the statute does not require actual fraud, it is unconstitutional as applied. I did not understand what you just said. Does that mean that actual fraud is the same thing as misleading and deceiving? No, you have to have a guilty intent. You have to have knowledge. You have to have intent. That's telemarketing. Three requirements in the telemarketing case. False representation, knowingly made with intent to deceive, and succeeded in doing so. I'm on page 620 of the telemarketing opinion. That is what the Supreme Court says is required in a charitable solicitation case in order to punish the charitable solicitation. If the statute doesn't require it, it is unconstitutional as applied. This statute does not require it. That doesn't mean you can't apply this statute to commercial speech or to other non-protected speech. You simply can't apply this statute without rewriting it to protected speech that's a charitable solicitation. And if you can't do that, then it's unconstitutional. It's simply that. Now, the agency has gone even further. They've interpreted it broadly and they've said negligence is enough. But I'm here really arguing about the face of the statute and charitable solicitation. That's all we really need to focus on. And that's really all this case is about. If we disagree with you on the as applied challenge, going back to Judge Garth's question, do you have, other than the newspaper or the insertion of Social Security in the newspaper article, do you have any other examples that would be reached by this statute? Yeah, a play. A play or a movie in which you picture Social Security as a good thing. Well, people could say, well, the government must be behind that. They must be sponsoring that. They must be authorizing it. If reasonable people can interpret it that way, that's all the statute requires. And that's all you need. It sounds a little preposterous, you know. I don't think so. You use the word Social Security in a play. The government is actually. You use Social Security. You present it as a favorable thing. That's all you need to do to violate the statute. Isn't the target of the statute deceptive and misleading conduct? Absolutely. But the statute is overbroad. It reaches way, way beyond what it is attempting to apply. But in the context of a play, you would have misleading and deceptive conduct? Is that your argument? If you cause people to think that your government sponsored in asserting that Social Security is a good thing or even a bad thing, then that's enough. What do you say about a candidate for public office, one who says Social Security is a wonderful thing and his adversary says Social Security is a bad thing. It takes away the incentive of people. Now you have two conflicting statements and you say both of them are sponsored by the Social Security agents. Depends on the context. Well, it all depends on the context. Sure, but it depends. The context of what you did or what your organization did here was found to be misleading and deceptive. But I thought you said that anything that mentions Social Security has the imprimatur of being endorsed by the Social Security agency. In the context in which people could, in that context, conclude that it was government sponsored. Well, I think I've been misled. Mr. Gettler, you're done. Thank you very much. Mr. Bagley. May it please the Court, Nicholas Bagley for the Social Security Administration. Keep your voice up, please. Happy to. To be very clear, there is no authority for the proposition that the government has to prove an intent to defraud before it moves to prevent a private organization from impersonating a federal agency. There's none. The cases upon which Petitioner principally relies involve state and municipal efforts to prohibit charities from soliciting for money when they devoted too much of that money to non-charitable purposes. And the Supreme Court only held that using a rigid percentage cutoff to distinguish good charities from bad charities was not well tailored to get at the compelling governmental interest in those cases, which was weeding out fraud. Now, at no point did the Supreme Court intimate that the First Amendment disables the government from enacting narrowly drawn, well-crafted, non-fraud prohibitions on certain types of highly deceptive and misleading speech. And indeed, to the contrary, the Supreme Court held in Olympic Committee that an outright prohibition on that program-related word trenched very little on any First Amendment concerns. Well, wait, isn't that different, though? That was being used for commercial purposes. Actually, I think the – Commercial speech is not entitled to the same degree of protection as charitable speech. I absolutely agree. But if you refer to pages 535 to 536 of the Court's opinion in Olympic Committee, they talk about certain promotional uses that would not be related to strictly business conduct, that would be outside the realm of commercial speech. And they say even as to those, it's a regulation simply as to the manner in which you're speaking and not a restriction on the content of your speech. I can pull up the quote for you if that would be useful. I have it here. Great. Mr. Bagley, do you agree that if we find that there was no as-applied problem here, that we still should consider the overbreadth question? No. I think that's because, as Mr. Gellner himself made clear, the linchpin of both arguments is precisely the same, which is to say whether the government had to prove an intent to defraud. And the Supreme Court held in Taxpayers for Vincent, you don't get to an overbreadth challenge that is based on the same question when you can just deal with it in an as-applied fashion. A true overbreadth challenge would be, look, it's true, you could apply this legitimately to me. You don't really agree with the way he presents the issue, do you? I mean, you don't need to prove fraud in order to have an overbreadth challenge. No, I don't believe you need to. He said the linchpin of his argument in the overbreadth challenge is finding fraud. Right, and all I'm saying here is that that's also the linchpin of his as-applied challenge. And the Supreme Court has said when it's the same basis for both the as-applied and the facial challenge, you just can stop with the as-applied. An example of what a true overbreadth challenge would be, it would be as if Mr. Geltner said, look, you can apply this to me. That's fine. I recognize that that's constitutional. But as applied to lots of people who aren't before the court, this is going to stomp on protected speech. You want to take the example that he presented, an article in a newspaper. Let's say it's a solicitation of money in order to privatize Social Security. He says the statute would breach that advertisement. I would disagree. You know, to the degree he's making an overbreadth challenge based on this kind of half-hearted suggestion in his brief, which I'm not sure he's actually preserved that argument, but to the degree he is, it really strikes me as pretty inconceivable that you'd run afoul of a statute that makes you liable for making a where a reasonable person would believe you were authorized by the Social Security Administration, simply taking a position in no way suggests the support or imprimatur of a federal government agency. But it says could be interpreted. I mean, could is, that's pretty open-ended. It doesn't say would be interpreted by a reasonable person. I'm only talking about the second problem. Sure. There's no scienter requirement with respect to the second problem. And the Fourth Circuit seemed to express concern about it. Let me try to give you a hypothetical that might be more of a challenge. What about a 30-year employee of the Social Security Administration who goes on the lecture circuit and there are flyers presented, come here and talk. Joe Smith, executive director, Social Security Administration. And then in the small print it says 1975 to 2005. When that man goes on the lecture circuit and speaks, couldn't a reasonable person think that his speech is related to or endorsed by, I should say, the government? I have a few points. First, the statute is pretty clear. It reasonably could be perceived to bear the imprimatur of the government. So that's not a strict liability. I mean, it exists. Joe Smith, executive director, Social Security Administration. Going to your example. Why wouldn't a typical American think that that person is speaking on behalf of the government? You know, I think if you looked at the content of his speech and he stood up and said, I worked for the Social Security Administration, I am espousing a view of the Social Security Administration, I think he might run afoul of the statute. If you're talking about just the flyer, I think. No, the flyer and then you go to the speech and he stands up and he says, look, I can tell you everything that went on there. I was there 30 years and I know the ins and outs and I can tell you everything that's wrong with the agency. Why wouldn't that speech, which it would seem to me would be classic First Amendment speech, why wouldn't that fall within the ambit of the second prong of the statute? I think if there were, if this individual made absolutely no effort to distinguish himself from the Social Security Administration, he might fall within the technical reach of the statute. But that's the reason we have as applied challenges is because if he has protected speech and he says, look, this can't be validly applied to me. He can come to court and he can say, yes, I say it was way out of line. But that doesn't demonstrate over breadth. Over breadth depends on having a substantial amount, a huge number of unconstitutional applications. All right. So that's what distinguishes you from the Ashcroft case. Precisely. Because there they were able to express not only an imagined list of future horribles, but actual things that were extant that would have fallen within the reach of the statute. Exactly. You really need a lot of unconstitutional applications. So that what you want here is where the heartland of the statute was, where it could be applied constitutionally, was very small. And where the range and the scope of its protections was, of its prohibition was extremely large. And I think that's not the statute we have in front of us. All right. So just to close up then to make sure I understand your position, it sounds like you're saying that you concede that there may possibly be some application that or speech that would run afoul of the plain language of the second prong of the statute. But not having any of that brought to the fore at this point, the Supreme Court has counseled that the strong medicine of declaring a statute facially overbroad would be inappropriate in this case. Do I correctly understand your question? That's right. I have the heebie-jeebies about conceding much to the court. But I think that if you could imagine some hypothetical circumstances where you think it would be unconstitutional, that's not enough to demonstrate overbreadth. Okay. Mr. Magli, anything else? No. I'd be happy to. If the court has no further questions, rest of the briefing. Okay. I have none. Thank you. Great. Thank you. Mr. Geltner? I think, Your Honors, that I have used up my time. Could you speak into the microphone? Sorry, Your Honors. I have used up my time. So I would simply request that you take a close look at Riley and telemarketing, which are the two most recent cases in the Schaumburg line. I think they clearly establish my proposition that actual fraud is mandatory as a predicate to punishing charitable speech, and that's all this case is about. We will do that, Mr. Geltner. Thank you very much. Thank you. Thank you, counsel, for the very good arguments. We'll take the case under advisement. Thank you.